**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J & J Sports Productions, Inc., | No. CV-17-1026-PHX-DGC |
| Plaintiff, | CV-17-1321-PHX-DGC (Consolidated) |
| v. | **ORDER** |
| Arturo Rubio, an individual; J.R.R. Restaurant, LLC, d/b/a Filiberto's Mexican Food, | |
| Defendants. | |

Plaintiff J & J Sports Productions, Inc. filed a complaint against Defendants Arturo Rubio and J.R.R. Restaurant, LLC, d/b/a Filiberto's Mexican Food, for violations of the Television Consumer Protection and Competition Act of 1992 and the Federal Communications Act of 1934, 47 U.S.C. §§ 553, 605 *et seq*. Doc. 1. Defendants move for summary judgment on all claims against Rubio and on Plaintiff's claim for enhanced statutory damages against J.R.R. Doc. 31. Plaintiff cross-moves on all claims. Doc. 32. The motions are fully briefed, and no party requests oral argument. Docs. 33, 34, 35, 38, 40. For the following reasons, the Court will deny Defendants' motion and grant Plaintiff's motion in part.

**I.    Background.**

Two championship sports fights were broadcasted nationwide on April 9 and May 7, 2016: the former between Manny Pacquiao and Timothy Bradley, Jr., and the latter

between Saul Alvarez and Amir Khan ("the programs"). Doc. 35-1 at 1-2. Plaintiff had the exclusive commercial distribution rights to the programs. *Id.* at 2.

On both dates, J.R.R. owned Filiberto's Mexican Food, LLC, in Phoenix, Arizona. Rubio was an employee of the restaurant, and he was and remains the sole member and owner of J.R.R. *Id.* Defendants ordered the programs through a satellite television service and broadcasted them at Filiberto's without paying a commercial licensing fee to Plaintiff. *Id.* For J.R.R.'s establishment, the commercial licensing fee was $2,000 for the April 9 program and $2,200 for the May 7 program. *Id.* at 3.

## II. Summary Judgment Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Discussion.

Counts 1 and 2 allege violations of 47 U.S.C. § 605 and § 553, respectively. Doc. 1. Plaintiff asks the Court to find Defendants liable only under § 605, noting that many courts have held that § 553 applies only to cable broadcasts and that the statutes are mutually exclusive. Doc. 32-1 at 9; *see J&J Sports Prods. Inc. v. Mosqueda*, No. CV-12-0523 PHX DGC, 2013 WL 2558516, at *1-*2 (D. Ariz. June 11, 2013) ("Even where both [§ 533 and

§ 605] are applicable, damages typically are awarded only under § 605."); *Kingvision Pay Per View, Ltd. v. Guzman*, No. CV-07-0963-PHX-PGR, 2008 WL 1924988, at *1 (D. Ariz. April 30, 2008) (noting same); *see also Joe Hand Promotions Inc. v. Spain*, No. CV-15-00152-PHX-SMM, 2016 WL 4158802, at *3 (D. Ariz. Aug. 5, 2016) ("The Ninth Circuit has not opined on the distinction of signals received via cable and satellite[.] District courts in the Ninth Circuit have, however, held that section 553 applies only to cable signals, and section 605 applies to satellite signals. A majority of the circuit courts of appeals . . . interpret sections 605 and 553 to be mutually exclusive.").

The Court accordingly will rule only on Plaintiff's § 605 claim and will dismiss the § 553 claim as moot. *See Mosqueda*, 2013 WL 2558516, at *3.

### A. J.R.R.'s Liability Under § 605.

Section 605 prohibits the unauthorized reception, interception, and publication of certain communications, including satellite-delivered television programming. 47 U.S.C. § 605; *DirecTV, Inc. v. Webb*, 545 F.3d 837, 843 (9th Cir. 2008). "[T]o be held liable for a violation of section 605, a defendant must be shown to have (1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by plaintiff." *Nat'l Subscription Television v. S & H TV*, 644 F.2d 820, 826 (9th Cir. 1981). The statute provides a private right of action to those aggrieved by violations. § 605(e)(3)(A).

J.R.R. concedes that it is liable for the alleged conduct and that the Court should enter judgment in Plaintiff's favor. Doc. 35 at 2-3, 7. The Court will grant Plaintiff's motion on its § 605 claim against J.R.R. *See Joe Hand Promotions Inc., v. Sizemore*, No. 2:15-cv-00695-DLR, 2016 WL 6143042, at *2 (D. Ariz. Oct. 21, 2016) (granting summary judgment against defendant only under § 605 at plaintiff's request where plaintiff had also alleged a claim under § 553).

### B. Rubio's Liability Under § 605.

To hold a member of an LLC individually liable under § 605, a plaintiff must show that: "(1) the [defendant] had a right and ability to supervise the infringing activities and

(2) had an obvious and direct financial interest in those activities." *G&G Closed Circuit Events, LLC v. Miranda*, No. 2:13-cv-2436-HRH, 2014 WL 956235, at *4 (D. Ariz. March 12, 2014); *see also J&J Sports Prods. Inc., v. Rubio*, No. CV-16-01111-PHX-JJT, 2017 WL 3234939, at *4 (D. Ariz. July 31, 2017); *J&J Sports Prods. Inc., v. Walia*, No. 10-5136 SC, 2011 WL 902245, at *3 (N.D. Cal. March 14, 2011).[1]

### 1. Defendant Rubio's Motion.

Rubio argues that he is not personally liable for J.R.R.'s conduct because he does not own and operate Filiberto's in his individual capacity and he did not "knowingly do anything wrong." Doc. 31 at 3-4. But knowingly engaging in a § 605 violation is not an element of Plaintiff's prima facie case for individual liability. *See Miranda*, 2014 WL 956235, at *4; *J&J Sports Prods., Inc. v. Mendoza-Govan*, No. C 10-05123 WHA, 2011 WL 1544886, at *6 (N.D. Cal. April 25, 2011) ("[I]f it is later found that defendant acted unknowingly, damages under . . . Section 605 may be reduced. This point is irrelevant, however, for determining liability." (citations omitted)). Indeed, Rubio later acknowledges that § 605 is a strict-liability statute. Doc. 35 at 3.

Rubio cites four of Plaintiff's interrogatory responses and asserts that Plaintiff cannot establish his individual liability. *Id.* at 7. The interrogatories sought Plaintiff's evidence that Rubio: (16) "had any personal involvement in the alleged signal piracy"; (23) "had direct control over the television(s) at Filiberto's" at the time; (24) "authorized the alleged television signal piracy violation"; and (25) "derived any benefit from the alleged signal piracy." Doc. 31-2 at 13-17. Plaintiff's responses informed Rubio that discovery was not yet complete and directed him to exhibits and previous disclosures. *Id.*

Rubio does not explain why Plaintiff's answers entitle him to summary judgment, and he identifies no other portions of the record showing that Plaintiff fails to meet its

---

[1] The parties do not cite, and the Court has not identified, a Ninth Circuit Court of Appeals decision adopting a test for determining when an LLC member may be individually liable under § 605. The *G&G Closed Circuit* test appears to be the prevailing standard among courts in this district and others in this circuit. Rubio's proposed test from *Joe Hand Promotions, Inc. v. Alvarado*, No. CV F 10-0907 LJO JLT, 2011 WL 1740536, at *7 (E.D. Cal. May 4, 2011), cites a party's argument and mischaracterizes the court's discussion. The court in *Joe Hand* restated the two-prong test cited above. *Id.*

- 4 -

burden of proof. *Celotex*, 477 U.S. at 322-23; *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003). Moreover, Plaintiff need only show that Rubio had a right and ability to supervise the infringing activity and an obvious and direct financial interest in that activity. Rubio's interrogatories – seeking evidence that he was personally involved in the alleged piracy on the nights in question, had direct control over the televisions, authorized the violation, or derived a benefit – seem to assume a higher burden than Plaintiff must meet.

Rubio admits that he was and is the sole member and owner of J.R.R. and an employee and agent of the LLC. Doc. 35-1, ¶¶ 4-5. He also admits that he intercepted and broadcasted the pirated programs on the nights in question, without paying the required commercial fee. *Id*. ¶¶ 6, 7, 8, 11-13. These admissions are sufficient to satisfy Plaintiff's burden of proof, as discussed below. Rubio has not shown that Plaintiff "fails to make a showing sufficient to establish the existence of an element essential" to its case. *Celotex*, 477 U.S. at 322, 325. The Court will deny Rubio's motion as to his individual liability.

### 2. **Plaintiff's Motion.**

Plaintiff argues that it is entitled to summary judgment on Rubio's personal liability because Rubio had a right and ability to supervise the showings of the programs and a financial interest in doing so as an employee and the sole owner and member of J.R.R. Doc. 32-1 at 13-14. In response, Rubio refers the Court to his summary judgment motion and again asserts that no evidence shows his personal wrongdoing. Doc. 35 at 2.

The Court agrees with Plaintiff. As the sole member of J.R.R., Rubio had the right and ability to supervise his business and any violations that occurred there, as well as a financial interest in showing the programs to attract customers and increase sales. *See, e.g.*, *Sizemore*, 2016 WL 6143042, at *3 n.2 ("As the sole shareholder and managing member of [defendant LLC] and the individual listed on its liquor license, [individual defendant] has the right and ability to supervise its activities and an obvious and direct financial interest in those activities"); *J&J Sports Prods., Inc. v. Mikhael*, No. SA CV 14-01463 WDK-PLA, 2016 WL 2984191, at *2 (C.D. Cal. May 19, 2016) (as members of

defendant LLC, individual defendants had right and ability to supervise the violation and strong financial interests therein); *Joe Hand Promotions, Inc. v. Tickle*, No. 4:12-cv-01874, 2016 WL 393797, at *13 (M.D. Penn. Feb. 2, 2016) (as corporate officer and registrant on defendant corporation's liquor license, individual defendant had right and ability to supervise violation under § 553 because "he was responsible for the acts of his agents, . . . [and could be] vicariously liable"); *Joe Hand Promotions, Inc. v. Upstate Recreation*, No. 6:13-2467-TMC, 2015 WL 685461, at *7 (D. S.C. Feb. 18, 2015) (sole owner and operator of corporation had right and ability to supervise the corporation and financial interest in violation). *But see Rubio*, 2017 WL 3234939, at *4 (holding that individual defendant's ownership of defendant LLC was insufficient to establish strong financial interest).

Additionally, Plaintiff admits that he broadcasted the pirated programs at the restaurant owned by his LLC without paying the $4,200 required to purchase commercial licenses from Plaintiff. Doc. 35-1, ¶¶ 3-10. These facts establish that Plaintiff and his LLC stood to benefit financially from the illegal act – obtaining valuable programs to broadcast for customers without incurring the normal costs.

The Court will grant Plaintiff's motion as to Rubio's individual liability.

**C. Damages.**

**1. Statutory Damages.**

Under § 605, a plaintiff may elect to recover actual damages or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Plaintiff seeks statutory damages, which may include "a sum of not less than $1,000 or more than $10,000" for each violation. § 605(e)(3)(C)(i)(II). Courts consider several factors when awarding statutory damages, including the maximum capacity of the commercial establishment, the number of patrons present at the time of the violation, and the commercial licensing fee that the defendant would have paid. *Mosqueda*, 2013 WL 2558516, at *3-*4.

The Court has previously found an award of $2,000 to be appropriate where a program was shown on one television to about 80 people and the licensing fee was $1,800. *Mosqueda*, 2013 WL 2558516, at *3-*4. Another court in this district awarded $4,000

when a program was broadcasted on five televisions to between 125-130 patrons and the licensing fee was $4,200. *See J&J Sports Prods., Inc. v. Vargas*, No. CV11-02229-PHX-JAT, 2013 WL 1249206, at *3 (D. Ariz. March 27, 2013).

Plaintiff seeks $6,000 for the April 9 violation and $6,600 for the May 7 violation. Doc. 32-1 at 15. The undisputed evidence shows that on April 9, ten patrons were present, the maximum capacity of the establishment was about 50, and the commercial licensing fee would have been $2,000. On May 7, six patrons were present and the licensing fee would have been $2,200. Docs. 35 at 3; 32-1 at 18. Plaintiff's requested award is too high given the factors the Court is to consider under *Mosqueda* and *Vargas*. Although the programs were shown on two televisions on both dates (Doc. 32-2 at 3, 12), very few people were present in an establishment with a modest maximum capacity. The Court finds that awards of $2,500 for the April 9 violation and $2,700 for the May 7 violation are just.

### 2. **Enhanced Damages.**

The Court has discretion to increase the award for each violation by up to $100,000 if it "finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Relevant factors courts consider include: repeat violations, substantial unlawful monetary gains, significant actual damages, advertising for the showing, cover charges, or premium prices. *Mosqueda*, 2013 WL 2558516, at *4. Some courts find "the mere unauthorized showing of a program sufficient to award enhanced damages because given the low probability of accidentally showing it, it must have been done willfully and for profit." *Id.*

Plaintiff seeks a $20,000 enhancement for the April 9 violation and a $25,000 enhancement for the May 7 violation. Doc. 32-1 at 15. As evidence of Defendants' willful conduct, Plaintiff notes that the programs were shown on two televisions, ten patrons were present on April 9, and six patrons were present on May 7. Doc. 32-1 at 18. Plaintiff asserts that this evidence establishes a "history of infringing behavior" and proves that Defendants did not inadvertently obtain and display the programs and that they acted

willfully for financial gain.  *Id.*  Defendants dispute that the evidence establishes willful conduct and point to the absence of evidence showing substantial gains, advertising, cover charges, or significant actual damages.  Docs. 31 at 9-12; 35 at 5-11.

Plaintiff offers no evidence of prior violations for the April 9 broadcast and no evidence of substantial unlawful monetary gains, advertising, cover charges, or premium prices for either night.  Nor is there evidence that the few patrons present were drawn to the restaurant by the programs.  In the absence of significant aggravating factors, but mindful of the deterrence goals of § 605, the Court finds that enhanced awards of $500 for the April 9 violation and $1,000 for the May 7 violation are sufficient.

The Court will accordingly order Defendants to pay Plaintiff a total of $3,000 for the April 9 violation and $3,700 for the May 7 violation.

**IT IS ORDERED**:

1. Defendant Arturo Rubio's motion (Doc. 31) is **denied**.  Plaintiff's motion (Docs. 32, 32-1) is **granted in part and denied in part** as explained above.  Summary judgment is granted with respect to all claims except Plaintiff's claim under § 553, which is **denied as moot**.  The Clerk of Court is directed to **terminate** this matter.

2. Defendants are ordered to pay $6,700 in damages.

3. Plaintiff shall submit a request for costs and attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) and Local Rule 54.1 and 54.2 to the Court on or before **January 30, 2019**.

Dated this 10th day of January, 2019.

David G. Campbell
Senior United States District Judge